## Wheeler, et al. v. Collins.

(Decided January 31, 1928.)

Appeal from Breathitt Circuit Court.

1. Counties.—Persons procuring warrant to unappropriated lands and arranging for their survey with person not at the time county surveyor obtain no rights in land under Kentucky Statuts., secs. 4703 and 4704, by virtue of promises of surveyor who qualified subsequently.

2. Counties.—One appointed county surveyor under Const. sec. 99, who failed to execute bond required by Kentucky Stats., secs. 3753, 3755, and 4672, was not legally in possession of office and had no right to make entries in county surveyor's book.

3. Counties.—In survey of unappropriated lands made under Kentucky Stats., secs. 4703 and 4704, by one appointed county surveyor under Const. sec. 99, prior to giving bond required by Kentucky Stats., secs. 3753, 3755, 4672, was in pursuance of fraudulent agreement for purpose of defeating rights of person procuring land warrant, survey was not valid as to person for whom it was made as act of a de facto officer, since such person was not an innocent party.

4. Counties.—Appointment of another county surveyor to take place of former appointee who failed to give bond within thirty days after appointment was valid under Const. sec. 99; Kentucky Stats., secs. 3753, 3755, 4672, making office vacant for incumbent's failure to give bond within thirty days; and entry of survey of unappropriated lands by successor under secs. 4703, 4704 constituted first legal entry, notwithstanding entry by former appointee.

5. Public Lands.—Where one appointed county surveyor under Const. sec. 99, made first entry of survey of unappropriated lands under Kentucky Stats., secs. 4703 and 4704, prior to giving bond required by sections 3753, 3755, 4672, such survey, alleged to have

been fraudulently made, was illegal, and persons having land warrant who obtained entry on book of succeeding county surveyor had first legal survey and were entitled to maintain caveat under Civil Code of Practice, sec. 473, to prevent issuance of patent under another survey made by original surveyor after successor had been appointed, due to former's failure to give bond for 30 days, which made office vacant.

A. H. PATTON and P. T. WHEELER for appellants.

O. H. POLLARD and GRANNIS BACH for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—
Reversing.

Pursuant to section 473 of the Civil Code of Practice, appellants filed, with the auditor, a caveat to prevent the issuing of a patent to W. M. Collins upon a survey which he had made. The Code contains the following provision:

"If any person obtain a survey of land to which another claims a better right, such other may enter a caveat with the register to prevent the issuing of a grant until the right be determined. The caveat shall state the plaintiff's claim and the reasons why the grant should not issue. . . .

"A copy of the caveat, certified by the register, shall, within sixty days from the time it is entered, be lodged with the clerk of the circuit court of the county where the land or the greater part thereof lies. . . .

"If such copy be lodged within said period, it shall be treated as a petition, and the proceedings upon it shall be the same, including an appeal to the Court of Appeals." Section 473.

The court sustained a general demurrer to the caveat and dismissed the proceeding. These facts are alleged:

Appellants procured from the Breathitt county court on May 28, 1926, a land warrant for 30 acres of land in Breathitt county and paid then the legal charge therefor, 5 cents an acre. At that time there was no qualified county surveyor in Breathitt county. The plaintiffs went to William G. Smith, a citizen of the county, and to William Turner, the county judge, and procured an agreement that the judge would appoint William G. Smith county surveyor on May 28, 1926, and that Smith would

then and there accept the appointment as surveyor and qualify. After this agreement was made the plaintiffs placed in the hands of Smith the land warrant, which had been issued to them, also a description of the land, and Smith agreed that he would, immediately upon his qualification as surveyor, make the entry of said land in the entry book in the office of the surveyor of Breathitt county, and would immediately proceed to make a survey of it for them and enter it upon the surveyor's book and certify it to the auditor, together with a plot of the survey, and request that a patent issue thereon to the plaintiffs for the land, he agreeing that the plaintiffs might go home and that he would do the work and render them a bill for his fees at the price of $10 a day, and the plaintiffs were then to pay him. But notwithstanding this agreement Smith sought out Collins and informed him of the land warrant and the above agreement, and secretly and fraudulently connived with Collins not to do the work or any of it, and wrongfully, on June 2, entered into a fraudulent agreement with Collins to return the land warrant and description of the land to the plaintiffs with the information that he had investigated the land and had found out that the land lay within Collins' boundary—all of which he fraudulently did, and agreed at the same time with Collins that he would qualify as surveyor and survey the land and make a plot and a certified certificate of survey in his name to the auditor, and for that purpose would qualify as surveyor of Breathitt county. In keeping with this fraudulent agreement entered into between him and the defendant, Collins, Smith did on the 9th day of June, 1925, after having returned plaintiffs' papers, help Collins secure a land warrant on the land from the Breathitt county court, and, after making any entry in the surveyor's book, proceeded fraudulently to survey the land for Collins, and in furtherance of his fraudulent scheme with Collins attempted to have himself appointed surveyor of Breathitt county, and secured an order from the judge of the Breathitt county court, which was entered on June 9, 1926, by which he qualified as surveyor, but he failed and refused to execute any bond as surveyor. And then, on the 12th day of June, 1926, he attempted to make a survey for Collins and certified the same to the auditor at Frankfort, all of which was in violation of his agreement with the plaintiffs and in pursuance of his fraudulent agreement with Collins

made for the purpose of defrauding the plaintiffs out of their rights. By reason of the fact that he had executed no bond as county surveyor he was not in truth the surveyor of Breathitt county at the time he did these things.

On or about August 30, 1926, the plaintiffs returned to Breathitt county, and, learning the facts, they procured the county judge to make an order appointing Fred K. Cope as surveyor of Breathitt county. The order was entered on August 30, 1926. Cope qualified and gave bond and has been at all times since then the regularly qualified and acting county surveyor of Breathitt county. Plaintiffs placed in his hands the land warrant issued to them requesting him to make an entry of same in the surveyor's book of Breathitt county, which he did, and for which they paid him, the land being properly described in the entry, which was signed by him as surveyor of Breathitt county. They made an agreement with Cope to go on and make the survey of the land and file it with the auditor, but he, too, entered into a conspiracy with Collins and, pursuant to the conspiracy, failed to make the survey. After this and on September 3, 1926, Collins procured the Breathitt county court to make an order appointing W. G. Smith as surveyor of Breathitt county. Smith qualified and then made a survey of the land in the name of Collins and filed it with the auditor. The plaintiffs prayed that the auditor be restrained from issuing a patent to Collins upon the survey so made by Smith.

Section 4703, Kentucky Statutes, provides:

> "Any person who wishes to appropriate any vacant and unappropriated land, may on application to the county court of the county in which the same lies, and paying therefor such price as the court may allow, not less than five dollars ($5.00) per hundred acres, obtain an order of court authorizing him to enter and survey any number of acres of such land in the county, not more than two hundred.
>
> "The party obtaining such order may, by an entry in the surveyor's book of the county describing the same, appropriate the quantity of land it calls for in one or more parcels, as he may think proper; but no one person shall, under this chapter, enter, survey or cause to be patented, more than two hundred acres of land in any one county."

Section 4704 further provides:

> "The surveyor shall survey the entries in the succession in point of time in which the same are made, bounding the same by plainly marked trees, stones or stakes, noting where it binds on a watercourse or the marked line of another survey, giving names."

It will thus be seen that the party obtaining the land warrant may, by an entry in the surveyor's book, describing the same, appropriate the quantity of land it calls for, and that the surveyor shall survey the entries in the succession in point of time in which the same are made. So the case before us turns on which of the parties got the first legal entry on the surveyor's book. As Smith did not qualify until after the plaintiffs had left the county, they obtained no right in the land by reason of any promise made to them as to what he would do after they left. He was not then county surveyor. He qualified afterwards in June under his arrangement with Collins, but at that time he did not execute a bond as such. Though he had not executed any bond he did enter upon the surveyor's book the entry of Collins. The office of county surveyor is created by the Constitution, section 99. Section 4672, Kentucky Statutes, provides:

> "The surveyor of each county before he enters on the duties of his office, shall give an obligation and good surety in the county court thereof, for the faithful and due execution of the duties of his station."

Section 3755, Kentucky Statutes, also provides as follows:

> "If the official bond is not given, and the oath of office taken on or before the day on which the term of office to which a person has been elected begins, or in cases of persons appointed to office within thirty days after such person has received notice of his appointment, the office shall be considered vacant, and he shall not be re-eligible thereto for two years."

Section 3753 further provides:

> "No officer from whom a covenant is required shall enter upon the duties of his office until the same

is given. A breach of this provision, or a failure to take the oath of office prescribed by law, shall be a misdemeanor, punishable by a fine of not less than fifty dollars ($50.000) nor more than one hundred dollars ($100.00), and, on conviction thereof, such officer shall be removed from office by the judgment of the court where such conviction is had.''

By the statute Smith had no authority to act as an officer before giving bond, and his failure to execute the bond in 30 days after notice of his appointment rendered the office vacant. He had no right to make an entry in the county surveyor's book. He was not legally in possession of the office. Creighton v. Com., 84 Ky. 103, 4 Am. St. Rep. 193; Chatham v. Davenport, 187 Ky. 801, 220 S. W. 1062.

It is earnestly insisted that, though Smith was not a de jure officer by the reason of the fact that he had failed to give bond, still he was a de facto officer and that his official acts are good as to an innocent third party. But if Smith did all this in pursuance of a fraudulent agreement with Collins made for the purpose of defrauding plaintiffs out of their rights, Collins was not an innocent third party. If this was the fact Smith was simply Collins' tool and Collins stands in no better light than Smith.

As Smith did not give bond within 30 days after his appointment, the office became vacant and the county court was authorized to appoint Cope as surveyor, and the entry on the surveyor's book by Cope was the first legal entry made. As the plaintiffs have the oldest entry, they may maintain the caveat to prevent a patent being issued to Collins under an entry made by Smith after he had given bond on September 3, 1926, for there was no vacancy on September 3 to which Smith could be appointed. The circuit court should therefore have overruled the demurrer to the petition.

Judgment reversed, and cause remanded for further proceedings consistent herewith.