# Richardson v. Commonwealth by Meredith, Atty. Gen.

(Decided Nov. 22, 1938.)

VICTOR A. JORDAN for appellant.

HUBERT MEREDITH, Attorney General, C. K. CALVERT, H. H. OWENS, W. T. DAVIS and A. M. EDWARDS, JR., for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is an action in ordinary against three defendants, jointly, brought by the Attorney General to prevent usurpation, respectively, of the office of a member of the Board of Education of Bell County. Section 480, Civil Code of Practice. The petition charges that each of the defendants had disqualified himself from holding such office by having committed a number of wrongful acts, particularly and more pertinently to the case on appeal, wrongfully conspired to perpetuate their kinsmen in office, paid campaign commitments, created useless jobs, and otherwise disregarded the best interests of the schools. It also charged lack of educational qualifications. Other allegations are not involved on this appeal. The prayer of the petition is that each of the defendants be declared to be a usurper and disqualified to hold the office, and that temporary and permanent injunctions issue restraining them from performing the functions and duties thereof. After submission of the case the defendant, Nelson Cowan, withdrew his answer, thereby permitting default judgment to go against himself. A special judge adjudged the defendants, W. L. Richardson and Tilford Day, to be disqualified to hold their respective offices and to be usurpers. They were enjoined from performing the duties of the office. Only Richardson appeals.

The appellant maintains that since the enactment of Section 4384-13 of the Statutes, the Attorney General is without authority to institute such a suit or action as this, which is in substitution though in the nature of a quo warranto proceeding. The applicable portion of that statute is as follows:

"The Superintendent of Public Instruction shall recommend for removal by the State Board of Education any school board member within the system of public education under the management and control of the State Board of Education, who in his opinion is guilty of immorality, misconduct in offive, incompetency or willful neglect of duty. In all cases the charges shall be in writing."

Section 4377-13 of the Statutes confers power on the State Board of Education to "remove from office

for immorality, misconduct in office, incompetency or willful neglect of duty'' a member of the school board. Section 483 of the Code of Civil Practice provides that a person entitled to an office or the Commonwealth may prevent the usurpation thereof by another by an ordinary action. If the proceeding is by the Commonwealth in relation to other than a county office, it must be instituted and prosecuted by the Attorney General. Section 486 of the Civil Code is as follows:

"A person who continues to exercise an office after having committed an act, or omitted to do an act, the commission or omission of which, by law, creates a forfeiture of his office, may be proceeded against for usurpation thereof."

Section 4399-22 of the Statutes sets forth the eligibility and qualifications of a member of the county board of education, and provides that if one who has qualified "shall do or incur anything which would have rendered him ineligible for re-election, his office shall without further action, be vacant."

We see no inconsistency between the provisions of the statute authorizing the institution of a proceeding by the Superintendent of Public Instruction and a trial with power of removal by the State Board of Education upon the grounds described and the provisions of the Code authorizing the institution of a proceeding by the Attorney General and the trial of the same officer with power of removal by a court. The former relates to offenses and conditions which may not affect the legal eligibility to hold office defined by Section 4399-22 of the Statutes. Whether the term "misconduct in office," used in Section 4384-13, is broad enough to cover a wrongful act which would result in forfeiture ipso facto of the office, or ineligibility as defined in Section 4399-22, is a question not before us. Certainly, there is no implied repeal of the Code provisions in reference to such cases or exclusive substitution for them. We have recognized the authority of the Attorney General to proceed in this manner and form in a number of cases.

We agree with the appellant that title to an office cannot be tried by a suit in equity or the process of injunction. Jenkins v. Congleton, 242 Ky. 46, 45 S. W. (2d) 456. This is not such a suit. It is, as indicated, an action in ordinary filed and tried according to the terms of the Code of Civil Practice, Section 480 et seq.

It is true that an injunction to restrain the alleged usurpers from immediately and thereafter performing the duties of the office was asked and obtained. This is deemed to have been done under the well recognized province of equity jurisdiction to give ancillary aid to an action at law whenever the remedy of injunction is necessary to preserve the existing status if irreparable damage may result from a failure so to preserve it. Therefore, the petition having made necessary allegations and a sufficient showing on the motion for a restraining order and temporary injunction, it was proper to issue such remedial process, though the action was one at law in the nature of quo warranto. State ex rel. Ellis v. Cuyahoga County, 70 Ohio St. 341, 71 N. E. 717; State ex rel. Barker v. Assurance Company of America, 251 Mo. 278, 158 S. W. 640, 46 L. R. A., N. S., 955, Ann. Cas. 1915A, 247.

We think the action was maintainable by the Attorney General. But when it comes to the evidence tending to support the charges against Richardson, we think there was a failure to establish his ineligibility and consequently his usurpation of the office.

In view of the recent decision of Oakes v. Remines, 273 Ky. 750, 117 S. W. (2d) 948, the appellee has expressly withdrawn his argument that the defendant must have affirmatively shown his educational qualification when he entered or, in this case, proposed to enter into the office. He has in effect also abandoned—as well he might—the contention that Richardson does not possess sufficient educational qualification as required by Section 4399-22 of the Statutes.

The terms of office of Cowan, Mills and Davenport were expiring January 3, 1938. Collett and Hubbard held over until the first Monday in ·January, 1939. Cowan had been defeated for re-election in November, 1937. It does not appear whether Mills and Davenport were candidates or not, but the three of them were to be succeeded by the appellant Richardson, Andrew Jackson and Henry Taylor. It appears that at least the latter two were unfriendly to the incumbent county superintendent, or "anti-Administration." It is indicated that Richardson was likewise at the time he was elected. On December 30, 1937, at a meeting of the county board, Cowan resigned and immediately thereafter Mrs. Daisy Richardson, wife of the appellant, was elected by the

remaining members and then and there qualified to fill the vacancy for the ensuing three days. Then Collett, who had another year to serve, resigned and Tilford Day, his tenant, was chosen and immediately qualified to fill his place. Then Hubbard, who also had a year to serve, resigned and Cowan, who had resigned a few minutes before, was chosen in his place and immediately qualified. He was thereby continued in office another year. Collett testified he had resigned because he had moved out of the county into the Pineville City District. Hubbard testified that the performance of the duties of the office took so much time it interfered with his obligations as a minister of the Gospel.

Previously, on November 10, 1937, Herbert Collett, a son of the board member, was employed as an office assistant and attendance officer at $150 a month; and Miss Evelyn Hubbard, daughter of another board member, was employed as a clerk at $100 a month, each of them to hold office until June 30, 1941. Miss Doris Collett, daughter of the board member was already secretary of the Board of Education. Glenn Richardson, son of the appellant, who had been a teacher in the county high school on a salary of $98 a month for the nine months' period, was elected assistant superintendent and truant officer in connection with his teaching duties at a salary of $150 a month for the 12 months' period; and appellant's daughter, who had been teaching in a district High School, was transferred to the county High School at an increased salary.

These things, with other acts of the board, on November 10th and December 30th, which increased the administrative cost of the schools, are among those charged to have been the result of the conspiracy in which the appellant, Richardson, participated. He had met with members of the board at two different places between his election and December 30th and talked over school matters. But he and all others concerned denied any wrongful agreement, and the county superintendent undertook to justify everything that was done. He testified the naming of Richardson's son as truant officer, with the title of assistant superintendent, was on the recommendation of the State Department of Education that such an officer should be chosen and because of his special efficiency for that place. The transfer of Miss Richardson was pursuant to a long-standing promise. Notwithstanding the denials of all the parties concerned

of any conspiracy or wrongful notice, the coincidences create more than a suspicion. The procedure and results speak impropriety and proclaim disregard of the spirit of the law in order to promote nepotism, secure favor, and handicap the board when the majority, as it appears, would not be so friendly to the superintendent and those favored. But so far as the appellant Richardson is concerned, the evidence does not prove guilt of either general or statutory malfeasance which would constitute him a usurper in the office he was elected to take after it was all done, that is, on January 3, 1938. Of like character is the fact that Richardson and his son, after the institution of this action, used a truck belonging to the board of education to make two trips to North Carolina, apparently to procure evidence of the former's educational qualification.

We are of opinion, therefore, that the judgment in so far as it declared Richardson out of office is erroneous, and should be and it is reversed.